ORIGINAL

FILED IN OPEN COURT
U.S.D.C. - Atlanta
SEP 01 2026
KEVIN P. WEIMER, Clerk
By: Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | Criminal Indictment |
| *v.* | No. 1:26CR0407 |
| ADA EVILA SERRANO NUÑEZ | **UNDER SEAL** |

THE GRAND JURY CHARGES THAT:

**Introduction**

At all times relevant to this Indictment, unless otherwise indicated:

I. Relevant Statutory Background

1. The Foreign Extortion Prevention Technical Corrections Act, as amended, Title 18, United States Code, Section 1352 *et seq.* ("FEPA"), was enacted on July 30, 2024 by Congress for the purpose of, among other things, criminalizing the "demand side" of foreign bribery by making it unlawful for any foreign government official to corruptly demand, seek, receive, accept, or agree to receive or accept bribes from certain classes of persons or entities for the purpose of being influenced, being induced to take or omit certain acts, and conferring an improper advantage in connection with obtaining or retaining business for or with, or directing business to, any person.

## II. The Defendant and Other Relevant Individuals and Entities

### A. *The Defendant*

2. Defendant ADA EVILA SERRANO NUÑEZ ("ADA SERRANO") was a Honduran citizen and resided in Suwanee, Georgia. ADA SERRANO served as Consul General at the Honduran Consulate in Atlanta, Georgia (the "Consulate"), from approximately July 2022 through March 2026. ADA SERRANO was a "foreign official," as that term is defined in FEPA, Section 1352(a)(1).

### B. *Co-Conspirator #1, Co-Conspirator #2, and Co-Conspirator #3*

3. Co-Conspirator #1, whose identity is known to the Grand Jury, was a Honduran citizen and resided in the Northern District of Georgia. Co-Conspirator #1 was an immediate family member of ADA SERRANO.

4. Co-Conspirator #2, whose identity is known to the Grand Jury, was a Honduran citizen and resided in the Northern District of Georgia. Co-Conspirator #2 was an immediate family member of ADA SERRANO.

5. Co-Conspirator #3, whose identity is known to the Grand Jury, was a dual United States and Honduran citizen and resided in the Northern District of Georgia. Co-Conspirator #3 was employed at the Consulate. Co-Conspirator #3 was a "foreign official," as that term is defined in FEPA, Section 1352(a)(1).

### C. *Other Relevant Entities and Individuals*

6. Consular Services Company #1 ("Consular Services Company"), the identity of which is known to the Grand Jury, was a private company registered to do business in Tennessee. Consular Services Company provided interstate

transportation, scheduling, and document preparation services to individuals who sought services at the Consulate and similar government offices. Consular Services Company was a "domestic concern," as that term is used in FEPA, Section 1352(b)(1)(A)(iii).

7. Individual #1, whose identity is known to the Grand Jury, was a citizen of the United States and Honduras, and resided in the Middle District of Tennessee. Individual #1 was an owner of Consular Services Company. Individual #1 was a "domestic concern" and an "officer," "employee," and "agent" of a domestic concern, as those terms are used in FEPA, Section 1352(b)(1)(A)(iii).

8. Individual #2, whose identity is known to the Grand Jury, was a Honduran citizen and resided in Middle District of Tennessee. Individual #2 was an employee of Consular Services Company. Individual #2 was a "domestic concern" and an "employee" and "agent" of a domestic concern, as those terms are used in FEPA, Section 1352(b)(1)(A)(iii).

9. Consulate Employee #1 ("Consulate Employee"), whose identity is known to the Grand Jury, was a Mexican citizen and resided in the Northern District of Georgia. Consulate Employee was employed at the Consulate until in or around January 2025.

## III. The Bribery and Money Laundering Schemes

10. Beginning at least in or around July 2023, and continuing until in or around March 2026, the defendant, ADA SERRANO, while serving as Consul General of Honduras in Atlanta, Georgia, together with Co-Conspirator #1, Co-Conspirator #2, and Co-Conspirator #3, agreed to and did demand and receive bribes from Individual #1, Individual #2, Consular Services Company, and others in connection with obtaining and retaining business for Consular Services Company, including by, among other things, authorizing, facilitating, and prioritizing access to appointments for Consular Services Company's clients at the Consulate in exchange for the bribes.

11. In general, Honduran nationals, travelers, and citizens living in the United States who sought services at the Consulate—such as obtaining passports and travel documents, notary services, and other civil records—were required to schedule an appointment through the Consulate's online appointment system and attend those appointments with the required documentation and information. Under that system, the Consulate offered a limited number of appointments per day.

12. As part of its business, Consular Services Company scheduled appointments for its clients at the Consulate and provided them with transportation to and from the Consulate and Tennessee. Consular Services Company charged its clients for scheduling the appointments and transporting them to and from the Consulate. Prior to ADA SERRANO's appointment as Consul General, Consular Services Company was not required to pay the

Consulate, or any consular employee, to arrange for their clients to access appointments at the Consulate to obtain consular services.

13. In or around at least July 2023, however, ADA SERRANO instructed Consulate Employee, who was then working as a security guard at the Consulate, to require Individual #1 and Individual #2 to pay a bribe for each person who Consular Services Company transported to the Consulate.

14. In general, Consular Services Company charged each of its clients approximately $300 for assisting them in obtaining services at the Consulate. This amount covered transportation to and from the Consulate and the cost of the bribes demanded by ADA SERRANO.

15. In exchange for the bribes, ADA SERRANO allowed Consular Services Company to gain access to appointments at the Consulate that they would otherwise be denied. This access allowed Consular Services Company's clients to attend the appointments necessary to secure passports, identification documents, and other services from the Consulate. ADA SERRANO directed Consulate Employee and Co-Conspirator #3 to coordinate directly with Individual #1 and Individual #2 to ensure Consular Service Company's clients were allowed into the Consulate after they paid the bribes.

16. In or around October 2023, ADA SERRANO directed Consulate Employee to take various steps to hide the scheme and avoid detection, including limiting Consular Services Company and its clients to a maximum of fifteen (15) consulate appointments per day. In particular:

a. On or about October 9, 2023, ADA SERRANO sent a message to Consulate Employee via Telegram, stating (as translated from the original Spanish) "Hi. I'm here. I'll call you. It's more private that way."

b. Later that same day, also on or about October 9, 2023, ADA SERRANO met with Co-Conspirator #1, Co-Conspirator #2, and Consulate Employee at ADA SERRANO's home. During the meeting, ADA SERRANO stated (as translated from the original Spanish), among other things:

> [F]or now, we have to keep a very low profile. And the short guy—he better not start bringing in more people than the number I told him, right? Up to 15, if possible fewer. . . .
>
> [T]here might be cameras. I'm scared, please be careful. . . .
>
> I want to check under my desk because that's where they put the microphones. . . .
>
> [T]omorrow cover up the vents for me because I have my doubts—I think there are cameras there. And they can see you right there when you're handing me that list. . . .

17. From in or around July 2023, through in or around December 2024, at ADA SERRANO's direction, Consulate Employee collected the bribes from Individual #1 and Individual #2 on ADA SERRANO's behalf.

18. From in or around January 2025 through in or around March 2026, at ADA SERRANO's direction, Co-Conspirator #3 collected the bribes from Individual #1 and Individual #2 on ADA SERRANO's behalf.

19. To conceal the proceeds derived from the scheme, from in or around July 2023, through at least in or around December 2024, ADA SERRANO directed Consulate Employee to distribute most of the cash bribes collected from Individual #1 and Individual #2 to Co-Conspirator #1 and Co-Conspirator #2. Co-Conspirator #1 and Co-Conspirator #2 then made cash deposits of between $100 and $6,000 into their personal bank accounts in the Northern District of Georgia, which Co-Conspirator #1 and Co-Conspirator #2 also used in connection with their businesses.

20. On a few occasions in or around 2024, Consulate Employee delivered the cash bribes collected from Individual #1 and #2 directly to ADA SERRANO.

**Count One**
**(Conspiracy to Violate the Foreign Extortion Prevention Act)**

21. Paragraphs 1 through 20 are incorporated by reference.

*The Conspiracy*

22. From at least in or around August 2024, and continuing through in or around March 2026, in the Northern District of Georgia and elsewhere, the defendant, ADA EVILA SERRANO NUÑEZ, did knowingly and willfully combine, conspire, confederate, agree, and have a tacit understanding with others known and unknown to the Grand Jury to commit an offense against the United States, that is, being a foreign official, to make use of the mails and means and instrumentalities of interstate commerce to corruptly demand, seek, receive, accept, and agree to receive and accept, directly and indirectly, anything of value personally and for any other person and nongovernmental entity from a domestic

concern and any officer, director, employee, and agent of a domestic concern (Individual #1, Individual #2, and Consular Services Company), in return for: (a) being influenced in the performance of an act and decision in her official capacity as Consul General; (b) being induced to do and omit to do an act in violation of her lawful duties; (c) conferring an improper advantage; and (d) using her influence to affect and influence an act and decision of the Honduran government and the Consulate, in connection with obtaining and retaining business for and with, and directing business to, Individual #1, Individual #2, and Consular Services Company, contrary to Title 18, United States Code, Section 1352.

*Manner and Means*

23. It was a purpose of the conspiracy for ADA SERRANO and her co-conspirators to enrich themselves by corruptly demanding and accepting bribes from Individual #1, Individual #2, and Consular Services Company in exchange for permitting Consular Services Company's clients to access appointments for services at the Consulate.

24. The manner and means by which ADA SERRANO and her co-conspirators sought to accomplish, and did accomplish, the purpose of the conspiracy included, among other ways, the following:

a. It was part of the conspiracy that ADA SERRANO, together with Co-Conspirator #1, Co-Conspirator #2, and Co-Conspirator #3, would and did demand, seek, receive, and accept bribes, directly and indirectly, from Individual #1, Individual #2, and Consular Services Company, in connection with obtaining

and retaining business for Consular Service Company, including through, among other ways, authorizing, facilitating, and prioritizing access to appointments for Consular Services Company's clients.

b. It was further part of the conspiracy that ADA SERRANO would and did cause Consulate Employee to prevent Consular Service Company's clients from entering the Consulate unless Individual #1 or Individual #2 paid a bribe to ADA SERRANO for each appointment.

c. It was further part of the conspiracy that ADA SERRANO would and did cause Consulate Employee and Co-Conspirator #3 to collect bribes on her behalf from Individual #1 and Individual #2.

d. It was further part of the conspiracy that ADA SERRANO, together with Co-Conspirator #1 and Co-Conspirator #2, would and did take steps to conceal their involvement in the scheme by, among other ways: (a) sharing information regarding Consular Service Company's appointments via encrypted messaging applications (e.g., WhatsApp, Telegram); (b) limiting the number of appointments that Individual #1 and Individual #2 could schedule per day to avoid detection; (c) instructing Consulate Employee and Co-Conspirator #3 to collect bribes on ADA SERRANO's behalf; and (d) instructing Consulate Employee, in most instances, to deliver the bribes to Co-Conspirator #1 and Co-Conspirator #2 who thereafter made incremental, low-value cash deposits, including by ATM, into their personal bank accounts.

*Overt Acts*

25. In furtherance of the conspiracy and to achieve the objects thereof, at least one of the co-conspirators committed and caused to be committed, in the Northern District of Georgia and elsewhere, at least one of the following overt acts, among others:

a. On or about August 9, 2024, ADA SERRANO caused Consulate Employee to deliver approximately $4,000 in cash to Co-Conspirator #2.

b. On or about September 10, 2024, ADA SERRANO caused Individual #2 to pay approximately $1,700 in cash to Consulate Employee, which Consulate Employee collected for the benefit of ADA SERRANO, Co-Conspirator #1, and Co-Conspirator #2.

c. On or about September 13, 2024, ADA SERRANO caused Consulate Employee to deliver approximately $3,595 in cash to ADA SERRANO.

d. On or about October 18, 2024, during a phone call between Co-Conspirator #1 and Consulate Employee, Consulate Employee indicated having approximately $4,900 to deliver, and stated that ADA SERRANO had asked Consulate Employee to speak to Co-Conspirator #2 to find out what Consulate Employee (as translated from the original Spanish) "should do with the money."

e. On or about October 18, 2024, on a subsequent phone call between Co-Conspirator #2 and Consulate Employee, Co-Conspirator #2 stated that ADA SERRANO had told Co-Conspirator #2 (as translated from the original Spanish): "Tell [Consulate Employee] that he should, that he should give me the money."

f. On or about October 19, 2024, ADA SERRANO, when receiving approximately $4,900 in cash from Consulate Employee, asked (as translated from the original Spanish): "[T]hat is for almost the whole month, right?"

g. On or about December 22, 2024, ADA SERRANO sent Consulate Employee a voice note through WhatsApp, stating (as translated from the original Spanish):

> Good morning, [Consulate Employee]. Um, give it to [Co-Conspirator #2], please. . . . First, tell me how much you have. I keep track of all the appointments that have been made. So you tell me how much it is, more or less, and when you tell me how much, then I'll call you back. Okay?

h. On or about December 22, 2024, in the same WhatsApp communication referenced in paragraph 25-g above, ADA SERRANO sent Consulate Employee a WhatsApp message, stating (as translated from the original Spanish): "save 2,000 for me and give it to me when I arrive."

i. On or about December 30, 2024, Consulate Employee delivered approximately $2,000 in cash to ADA SERRANO.

All in violation of Title 18, United States Code, Section 371.

**Count Two**
**(Foreign Extortion Prevention Act)**

26. Paragraphs 1 through 20 and 23 through 25 are incorporated by reference.

27. On or about the date set forth below, in the Northern District of Georgia and elsewhere, the defendant, ADA EVILA SERRANO NUÑEZ, being a

foreign official, did make use of the mails and means and instrumentalities of interstate commerce to corruptly demand, seek, receive, accept, and agree to receive and accept, directly and indirectly, anything thing of value personally and for any other person and nongovernmental entity from a domestic concern (Individual #1, Individual #2, and Consular Services Company), in return for: (a) being influenced in the performance of an act and decision in her official capacity as Consul General; (b) being induced to do and omit to do an act in violation of her lawful duties; (c) conferring an improper advantage; and (d) using her influence to affect and influence an act and decision of the Honduran government and the Consulate, in connection with obtaining and retaining business for and with, and directing business to, Individual #1, Individual #2, and Consular Services Company, as set forth below:

| COUNT | APPROXIMATE DATE | MEANS AND INSTRUMENTALITIES OF INTERSTATE COMMCERCE |
|---|---|---|
| TWO | December 22, 2024 | A WhatsApp message and voice note from ADA SERRANO, while ADA SERRANO was located outside Georgia, to Consulate Employee, while Consulate Employee was located within the Northern District of Georgia, wherein ADA SERRANO stated (as translated from the original Spanish) that she was keeping "track of all the appointments that have been made" and instructed Consulate Employee to "save me 2,000 and give it to me when I get there." |

All in violation of Title 18, United States Code, Section 1352.

**Count Three**
**(Money Laundering Conspiracy)**

28. Paragraphs 1 through 20 and 23 through 25 are incorporated by reference.

29. Beginning at least in or around July 2023, and continuing until around the end of December 2024, in the Northern District of Georgia and elsewhere, the defendant, ADA EVILA SERRANO NUÑEZ, did knowingly combine, conspire, confederate, agree, and have a tacit understanding with others known and unknown to the Grand Jury to commit certain offenses under Title 18, United States Code, Section 1956, that is, to knowingly conduct and attempt to conduct a financial transaction in and affecting interstate and foreign commerce, which involved the proceeds of a specified unlawful activity, that is, with respect to a financial transaction occurring in whole and in part in the United States, at least one offense against a foreign nation involving bribery of a public official, and the misappropriation, theft, and embezzlement of public funds by and for the benefit of a public official, in violation of the Honduran Penal Code, as defined in Title 18, United States Code, Section 1956(c)(7)(B)(iv), knowing that the property involved in the financial transaction represented the proceeds of some form of unlawful activity, and knowing that the transaction was designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of said specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i), all in violation of Title 18, United States Code, Section 1956(h).

## Forfeiture

30. As a result of committing one or more of the offenses alleged in Counts One and Two of this Criminal Indictment, the defendant, ADA EVILA SERRANO NUÑEZ, shall forfeit to the United States, pursuant to 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to such offenses, including but not limited to a sum of money equal to the amount of proceeds the defendant obtained as a result of the offenses for which the defendant is convicted.

31. As a result of committing the offense alleged in Count Three of this Criminal Indictment, ADA SERRANO shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(1), any and all property, real or personal, involved in such offense and all property traceable to such offense, including but not limited to a sum of money equal to the total amount of money involved in the offense for which the defendant is convicted.

32. If as a result of any act or omission of ADA SERRANO, any property subject to forfeiture:

a. cannot be located upon the exercise of due diligence;

b. has been transferred or sold to, or deposited with, a third person;

c. has been placed beyond the jurisdiction of the Court;

d. has been substantially diminished in value; or

e. has been commingled with other property which cannot be subdivided without difficulty,

the United States intends, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b), and Title 28, United States Code, Section 2461(c), to seek forfeiture of any other property of ADA SERRANO's up to the value of the forfeitable property.

A True BILL

FOREPERSON

THEODORE S. HERTZBERG
*United States Attorney*

GARRETT L. BRADFORD
*Assistant United States Attorney*
Georgia Bar No. 074374

600 U.S. Courthouse
75 Ted Turner Drive SW
Atlanta, GA 30303
404-581-6000; Fax: 404-581-6181

LORINDA I. LARYEA
*Chief, White Collar and Corporate Enforcement Section*
*U.S. Department of Justice*

LIGIA MARKMAN
*Trial Attorney*
*Foreign Corrupt Practices Act Unit*

The Bond Building
1400 New York Avenue NW
Washington, D.C. 20005
202-514-2000; Fax: 202-514-3708